Doris L. SASSOWER, Plaintiff,

v.

**Hon. Guy MANGANO, Presiding Justice of the Appellate Division, Second Department of the Supreme Court of the State of New York, and the Associate Justices Thereof, Gary Casella and Edward Sumber, Chief Counsel and Chairman, respectively, of the Grievance Committee for the Ninth Judicial District, Grievance Committee for the Ninth Judicial District, Does 1–20, being present members thereof, Max Galfunt, being a Special Referee, and G. Oliver Koppell, Attorney General of the State of New York, all in their official and personal capacities, Defendants.**

No. 94 Civ. 4514 (JES).

United States District Court,
S.D. New York.

May 21, 1996.

114

Doris L. Sassower, White Plains, New York, Plaintiff, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, New York City, for Defendants (Jay Weinstein, Assistant Attorney General, of counsel).

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Pursuant to 42 U.S.C. § 1983, plaintiff Doris L. Sassower, appearing *pro se*, brings the instant action against defendants Honorable Guy Mangano, Gary Casella, Edward Sumber, Max Galfunt, former New York State Attorney General G. Oliver Koppell, and the Grievance Committee for the Ninth Judicial District and its members (collectively "defendants") arising out of state disciplinary proceedings which resulted in the suspension of her license to practice law. Sassower claims, *inter alia*, that defendants deprived her of her right to due process by conspiring to suspend her license to practice law without granting a hearing thereon. Pursuant to Federal Rule of Civil Procedure 12(c), defendants move for judgment on the pleadings on the grounds that the Court lacks subject matter jurisdiction and Sassower's claims are barred by res judicata, absolute immunity, and the Eleventh Amendment. Pursuant to Federal Rules of Civil Procedure 12(c), 12(d), and 56(c), Sassower cross-moves for a preliminary injunction and for summary judgment.

## BACKGROUND

Pursuant to Judiciary Law § 90(2), defendant Appellate Division, Second Department of the Supreme Court of the State of New York (the "Second Department") is authorized to discipline members of the New York State bar within the Second Department. Complaint ("Compl.") ¶ 19. At all relevant times, defendant Honorable Guy Mangano served as the presiding justice of the Second Department. *Id.* ¶ 19. Pursuant to N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4(a), the Second Department appointed defendant Grievance Committee for the Ninth Judicial District (the "Grievance Committee") to investigate and prosecute matters involving attorney misconduct in the Ninth Judicial District. *Id.* ¶¶ 20, 21. Defendants Gary Casella and Edward Sumber serve as Chief Counsel and Chairman, respectively, of the Grievance Committee. *Id.* ¶¶ 21, 22. Defendant Max Galfunt is a special referee appointed by the Second Department to hear disciplinary matters prosecuted by the Grievance Committee. *Id.* ¶ 23. At all relevant times, defendant G. Oliver Koppell was the Attorney General of the State of New York. *Id.* ¶ 24.

Pursuant to N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4(c), the Grievance Committee may commence an investigation of professional misconduct against an attorney *sua sponte* or upon receipt of a complaint by the Second Department or by any other such committee. *See* N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4(c). After a preliminary investigation and upon a majority vote of its full membership, the Grievance Committee may 1) dismiss the complaint, 2) conclude the matter by issuing a letter of caution to the attorney, 3) conclude the matter by privately admonishing the attorney, 4) serve written charges upon the attorney and hold a hearing on the matter, or 5) recommend to the Second Department that disciplinary proceedings be instituted. *See* N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4(e).

In 1955, plaintiff Doris L. Sassower was admitted to the bar of the State of New York. In 1987 and 1988, two former clients of Sassower filed complaints with the Grievance Committee against her relating to fee disputes. Compl. ¶ 42. On July 31, 1989, the Grievance Committee filed a report with the Second Department in relation thereto. *Id.* ¶¶ 41, 42. On December 14, 1989, the Second Department authorized the prosecution of a disciplinary proceeding against Sassower. *Id.* ¶ 55. On February 6, 1990, the Grievance Committee issued a disciplinary petition against Sassower (the "February

1990 petition"). *Id.* ¶ 59. On February 8, 1990, Sassower was served with notice of the February 1990 petition. *Id.*

On May 8, 1990, pursuant to N.Y.Comp. Codes R. & Regs. tit. 22, § 691.13(b)(1), the Grievance Committee filed an order to show cause with the Second Department seeking a court-ordered medical examination of Sassower to determine whether she was mentally incapable of practicing law. Compl. ¶ 66. On October 18, 1990, the Second Department granted the motion directing Sassower to be examined by a qualified medical expert. *Id.* ¶ 93. Sassower refused to comply with the October 18, 1990 order. *Id.*

On January 25, 1991, the Grievance Committee filed an order to show cause with the Second Department seeking the immediate suspension of Sassower's license to practice law for her failure to comply with the October 18, 1990 order. Compl. ¶¶ 85, 93. By order dated June 14, 1991, pursuant to N.Y.Comp.Codes R. & Regs. tit. 22, § 691.13(b)(1), the Second Department granted the Grievance Committee's motion, thereby suspending Sassower's license to practice law pending her compliance with the October 18, 1990 order (the "June 1991 suspension order"). *Id.* Thereafter, Sassower moved by order to show cause for vacatur or modification of the Second Department's June 1991 suspension order and for a temporary restraining order on the ground that the suspension of her license was "unauthorized and excessive punishment for her attorney's legitimate legal challenge to [the] October 18, 1990 Order." *Id.* ¶¶ 97, 98. On July 15, 1991, the Second Department denied Sassower's motion. *Id.* ¶ 98.

By motion dated July 19, 1991, Sassower moved for leave to appeal, *inter alia*, from the June 1991 suspension order to the New York State Court of Appeals (the "Court of Appeals") on the grounds that the Second Department had failed to comply with the requirements of N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4 and related case law, thereby depriving her of her constitutional right to due process. Compl. ¶ 107. On September 10, 1991, the Court of Appeals denied Sassower's motion for leave to appeal. *Id.* ¶ 117.

On April 9, 1992, the Grievance Committee issued *sua sponte* a supplemental petition against Sassower alleging professional misconduct in two previous cases (the "April 1992 supplemental petition"). Compl. ¶ 127.

On June 16, 1992, Sassower again moved to vacate the June 1991 suspension order on the ground that a recent decision, *In re Russakoff,* 79 N.Y.2d 520, 583 N.Y.S.2d 949, 593 N.E.2d 1357 (1992), required that the Second Department hold a post-suspension hearing and make factual findings on the record. Compl. ¶ 134. By motion dated June 18, 1992, Sassower moved the Second Department to dismiss the April 1992 supplemental petition, as well as the February 1990 petition, on the ground that both failed to comply with the provisions of Judiciary Law § 90 and N.Y.Comp.Codes R. & Regs. tit. 22, §§ 691.4(e)(4), (f), and (h). *Id.* ¶ 135. On July 31, 1992, the Second Department denied Sassower's motion to vacate the June 1991 suspension order and all other relief requested by Sassower. *Id.* ¶ 143.

Thereafter, Sassower moved to appeal as of right to the Court of Appeals the June 1991 suspension order on the ground that her constitutional right to equal protection had been denied. Compl. ¶ 144. By order dated November 18, 1992, the Court of Appeals dismissed Sassower's appeal for lack of finality. *Id.* ¶ 145.

On January 28, 1993, the Grievance Committee issued a second disciplinary petition against Sassower arising from five charges filed *sua sponte* by the Grievance Committee (the "January 1993 petition"). Compl. ¶¶ 151, 153. Between January 28, 1993 and February 22, 1993, Sassower was served with notice of the January 1993 petition. *Id.* ¶ 155. On February 22, 1993, Sassower moved to vacate the January 1993 petition for lack of personal jurisdiction. *Id.* ¶ 156.

On March 25, 1993, the Grievance Committee issued a third disciplinary petition against Sassower based on additional allegations of professional misconduct (the "March 1993 petition"). Compl. ¶ 162. On March 30, 1993, Sassower was served with the petition.[1]

---

1. Sassower claims herein that the Grievance

Committee failed to personally serve her with

*Id.* ¶ 162. On April 14, 1993, Sassower moved to vacate the March 1993 petition for lack of personal jurisdiction because of improper service of process. *Id.* ¶¶ 164, 172.

On April 28, 1993, Sassower instituted an Article 78 proceeding against Honorable Guy Mangano, as presiding justice of the Appellate Division, Second Department, Max Galfunt, as Special Referee assigned to hear disciplinary petitions, and Edward Sumber and Gary Casella, as Chairman and Chief Counsel, respectively, of the Grievance Committee for the Ninth Judicial District. Compl. ¶ 166. In that action, Sassower claimed that the defendants failed to comply with jurisdictional pre-petition procedures under N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4(e) and (f). *Id.*

On May 24, 1993, while the Article 78 petition was pending, the Second Department denied Sassower's motions to vacate the January 1993 and March 1993 petitions. Compl. ¶ 171. On June 14, 1993, Sassower moved to reargue/renew the Second Department's May 24, 1993 order. *Id.* ¶ 172.

In the Article 78 proceeding, defendants moved to dismiss on the grounds of failure to state a claim and the statute of limitations. *See* Sassower's Petition for a Writ Of Certiorari filed as Sassower Exh. 2A ("Cert. Pet'n.") at A–20. On July 2, 1993, Sassower cross-moved to amend her Article 78 petition to plead an alleged "pattern of abusive and harassing conduct" by the defendants. Compl. ¶ 173. By order dated September 20, 1993, the Second Department denied Sassower's June 14, 1993 reargument/renewal motion, granted the defendants' motion to dismiss the Article 78 petition "on the merits," and denied Sassower's relief requested in her cross-motion. *Id.* ¶¶ 182, 183, 185; Cert. Pet'n. at A–21.

On November 19, 1993, Sassower moved the Second Department for, *inter alia,* dismissal of the February 1990, January 1993, and March 1993 disciplinary petitions. Compl. ¶ 189. In addition, Sassower sought

notice of the January 1993 and March 1993 petitions, as required by Judiciary Law § 90(6). Compl. ¶¶ 155, 162.

transfer to another judicial department on the ground that the Second Department knew that the disciplinary proceedings against her were somehow "void." *Id.* ¶ 190. On January 24, 1993, Sassower appealed the Second Department's dismissal of her Article 78 petition and denial of her cross-motion on the grounds that 1) the Second Department acted in a fraudulent and criminal manner, 2) the Second Department improperly reviewed its own conduct in an Article 78 proceeding against it, and 3) the "open-ended interim suspension orders and the disciplinary mechanism" violated her rights to due process, equal protection and free speech. *Id.* ¶ 198; Cert. Pet'n. at A–93 to A–94.

By order dated January 28, 1994, the Second Department denied Sassower's November 19, 1993 dismissal/transfer motion. Compl. ¶ 201. By decision dated May 12, 1994, the Court of Appeals dismissed Sassower's appeal taken from the Second Department's dismissal of the Article 78 proceeding and denial of her cross-motion on the grounds that her appeal 1) lacked finality and 2) did not directly involve a substantial constitutional question. *Id.* ¶ 209. On September 29, 1994, the Court of Appeals denied Sassower's motion to reargue its May 12, 1994 order. *See* Cert. Pet'n. at A–23.

In October 1994, pursuant to 28 U.S.C. § 1257(a), Sassower filed a petition in the United States Supreme Court for certiorari to review the June 1991 suspension order, which had become final when the New York Court of Appeals denied leave to appeal.[2] *See* Cert. Pet'n. at 1. Sassower sought a writ of certiorari on the grounds that 1) N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4 is unconstitutional on its face and as applied, 2) New York Judiciary Law § 90 is unconstitutional in failing to provide for a post-suspension hearing, and 3) the Second Department applied the statutory disciplinary provisions in an unconstitutional manner. *See id.* at 16–25. In her petition for certiorari, Sassower further states that "the

2. In her petition for a writ of certiorari, Sassower appears to appeal from the New York Court of Appeals decisions denying leave to appeal directly the June 1991 suspension order and also the dismissal of the Article 78 proceeding.

constitutional issues were raised in the Appellate Division, Second Department, the originating court in this proceeding." *Id.* at A–89, n. 1. On May 15, 1995, the Supreme Court denied Sassower's petition for a writ of certiorari. *See Sassower v. Mangano,* —— U.S. ——, 115 S.Ct. 1961, 131 L.Ed.2d 852 (1995).

On June 20, 1994, Sassower filed the instant action, claiming that 1) N.Y.Comp. Codes R. & Regs. tit. 22, §§ 691.4(1)(1) and 691.2 are unconstitutional on their faces and as applied, compl. ¶¶ 210, 211, 2) defendants acted under color of state law to "wilfully and maliciously" violate her constitutional rights by, *inter alia,* conspiring to deprive her of her license to practice law, *id.* ¶¶ 236, 247, and 3) defendants intentionally inflicted emotional distress upon her, *id.* ¶ 251. Sassower seeks, *inter alia,* declaratory judgment, dismissal of the June 1991 suspension order, reinstatement of her license to practice law, compensatory and punitive damages, attorney's fees and costs. *Id.* ¶ 251. On September 28, 1995, the Court issued a decision on the Record denying Sassower's application for a temporary restraining order on the ground that Sassower had failed to establish the need for emergency relief. *See* Transcript dated September 28, 1995 at 25.

Pursuant to Federal Rule of Civil Procedure 12(c), defendants move for judgment on the pleadings.[3] Pursuant to Federal Rule of Civil Procedure 41(b), defendants also move to dismiss on the ground that Sassower failed to comply with this Court's November 4, 1995 order directing her to file with this Court copies of all documents filed in the New York State court proceedings relating

to the claims raised herein. Pursuant to Federal Rules of Civil Procedure 12(c), (d), and 56(c), Sassower cross-moves for a preliminary injunction and for summary judgment.[4] In addition, Sassower moves for reconsideration of the denial of her motion for recusal of this Court. *See* Transcript dated October 27, 1995 at 6–8.

## DISCUSSION

■ On October 26, 1995, one day prior to oral argument on all outstanding motions, Sassower filed a motion for recusal pursuant to 28 U.S.C. § 144 on the ground that the Court held a personal bias against her. At oral argument on October 27, 1995 the Court denied Sassower's motion both as untimely and as lacking in merit because it alleged at best a dissatisfaction with the Court's rulings. On March 8, 1996, Sassower filed a motion for reconsideration of her recusal motion on the ground that the "Court's conduct has been maliciously calculated to injure" her. That motion was based upon an assertion that the Court imposed upon her a short deadline to file her motions. However, since the Court also imposed the same deadline upon the defendants, Sassower's renewed recusal motion likewise must be denied. *See United States v. Brinkworth,* 68 F.3d 633, 639 (2d Cir.1995) (affirming denial of recusal motion filed soon after adverse rulings and eight days prior to trial); *see also Apple v. Jewish Hosp. and Medical Ctr.,* 829 F.2d 326, 333 (2d Cir.1987) (prompt application of recusal motion required to avoid risk that moving party delay his application until after adverse ruling).

---

3. Because both parties filed voluminous affidavits relating to defendants' motion, the Court treats defendants' motion for judgment on the pleadings as a motion for summary judgment pursuant to Federal Rule ·of Civil Procedure 12(c). *See, e.g., Hanson v. McCaw Cellular Communic.,* 77 F.3d 663 (2d Cir.1996).

4. At one point in these proceedings, Sassower asserted that she had not cross-moved for summary judgment. *See* Transcript dated September 28, 1995 ("Sept. 28, 1995 Tr.") at 31–33. However, on June 26, 1995, Sassower filed a "Memorandum Of Law In Opposition To Defendants' Motion For Dismissal On The Pleadings And In Support Of Summary Judgment And Sanctions In The Plaintiff's Favor" accompanied by a

Statement Pursuant to Local Rule 3(g), which is relevant only to a motion for summary judgment. In Sassower's affidavit in support of her cross-motion, she explicitly requests "that a summary judgment in Plaintiff's favor as to liability be granted." *See* Affidavit of Doris L. Sassower Sworn to June 23, 1995 ¶ 32. Moreover, at oral argument, Sassower stated, "I submitted my summary judgment papers June 23, [1995]." Sept. 28, 1995 Tr. at 20. Thereafter, Sassower argued that her motion papers do not seek summary judgment. However, because Sassower concedes that her motion seeks affirmative relief on the merits, the Court construes her motion as one for summary judgment.

Turning to the merits of the claims asserted in this action, it is clear that Sassower's claims must be dismissed because the Court lacks subject matter jurisdiction to resolve them. It is well established that a federal district court is one of original, and not appellate, jurisdiction and therefore has no subject matter jurisdiction to review state court decisions. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). Therefore, an aggrieved state court litigant must pursue his claims directly in the state appellate courts and ultimately to the United States Supreme Court. *See Feldman,* 460 U.S. at 476, 103 S.Ct. at 1311; *Rooker,* 263 U.S. at 415, 44 S.Ct. at 150; *Tang v. Appellate Division,* 487 F.2d 138, 141 (2d Cir.1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

Moreover, the *Rooker–Feldman* doctrine bars not only claims which would involve direct review of a state court decision, but also claims which are "inextricably intertwined" with a state court decision or which seek relief that, if granted, would modify a state court decision. *See Feldman,* 460 U.S. at 483, n. 16, 103 S.Ct. at 1316, n. 16; *Rooker,* 263 U.S. at 416, 44 S.Ct. at 150.

Here, Sassower challenged the June 1991 suspension order directly in the Second Department and collaterally in the Article 78 proceeding. Thereafter, Sassower pressed both her statutory and constitutional challenges to the June 1991 suspension order and to the New York State bar disciplinary rules upon which they were issued, in the state appellate courts and ultimately in the Supreme Court. Indeed, Sassower raised all of the claims asserted herein in the state court and in her petition for a writ of certiorari, including claims that N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4 is unconstitutional on its face and as applied, and that New York Judiciary Law § 90 is unconstitutional in failing to provide for a post-suspension hearing.

*See* Cert. Pet'n. at 16–25, A–89 n. 1. Because all of the relief requested herein would necessarily involve direct, or at a minimum indirect, review of the propriety of those state court decisions, Sassower's claims must be dismissed. *See Rooker,* 263 U.S. at 415–16, 44 S.Ct. at 150; *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1314; *Campbell v. Greisberger,* 80 F.3d 703, 705 (2d Cir.1996).

In *Feldman,* the plaintiffs, unsuccessful applicants to the District of Columbia Bar, brought actions in federal district court claiming that the state court had violated their federal statutory and constitutional rights by denying their petitions for waivers of state bar provisions. The Supreme Court distinguished between the two types of claims raised in *Feldman:* "[t]he first [being] a constitutional challenge to the state's general rules and regulations governing admission; the second [being] a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." *Feldman,* 460 U.S. at 485, 103 S.Ct. at 1316 (citations omitted). The Supreme Court held that a federal district court has no subject matter jurisdiction to adjudicate the latter type of claim, which may be challenged only in the Supreme Court. *See id.* at 475, 103 S.Ct. at 1311. However, district courts "have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 486, 103 S.Ct. at 1317.

Because in the instant case all of the claims asserted here, including the general challenges to the constitutionality of the statutory scheme, were raised and denied in the state proceedings, *see* Cert. Pet'n. at A–20 to A–87, A–89 n. 1, Sassower's constitutional challenge to the state bar disciplinary rules are inextricably intertwined with her particu-

lar case.[5] *See Feldman* 460 U.S. at 475, 103 S.Ct. at 1311.

■ In any event, Sassower's constitutional claims are barred by res judicata. The doctrine of res judicata bars subsequent litigation of claims which were raised or could have been raised in a prior proceeding involving the same parties or their privies, which resulted in a judgment on the merits by a court of competent jurisdiction. *See Liona Corp. v. PCH Assocs.*, 949 F.2d 585, 594 (2d Cir.1991); *see also Winters v. Lavine*, 574 F.2d 46, 57 (2d Cir.1978). Because all of Sassower's claims were repeatedly raised and rejected in state court proceedings, they are barred from being relitigated in the instant action. *See Tang v. Appellate Division*, 487 F.2d 138 (2d Cir.1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

■ Sassower challenged the constitutionality of the June 1991 suspension order and the relevant statutory disciplinary provisions in the state trial and appellate courts as well as in the United States Supreme Court. Moreover, for the purposes of res judicata, the dismissal of Sassower's January 24, 1993 appeal as of right by the Court of Appeals on the ground that no substantial constitutional question was involved, was a final adjudication on the merits. *See Turco v. Monroe County Bar Ass'n*, 554 F.2d 515, 521 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *McCune v. Frank*, 521 F.2d 1152, 1155 (2d Cir.1975); *Olitt v. Murphy*, 453 F.Supp. 354, 359 (S.D.N.Y.), *aff'd*, 591 F.2d 1331 (2d Cir.1978), *cert. denied*, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979).

■ In addition, Sassower's claims against defendants in their individual capacities are barred by absolute immunity. The doctrine of absolute judicial immunity bars claims against judges for actions not made "'in the clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–7, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52, 20 L.Ed. 646 (1871)). The "clear absence of all jurisdiction" has been narrowly construed to encompass only acts taken outside the scope of all authority, as in the case of a probate judge adjudicating a criminal trial. *See Stump*, 435 U.S. at 357, n. 7, 98 S.Ct. at 1105, n. 7; *Pierson v. Ray*, 386 U.S. 547, 553, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

■ In this case, the Second Department is statutorily authorized to suspend from practice any attorney engaged in professional misconduct, *see* N.Y.Jud.Law § 90(2) (McKinney 1983), and to hear related challenges. As a result, Sassower has alleged no basis upon which a fact finder could rationally infer that defendant Judge Mangano and the associate justices of the Second Department acted outside their proper jurisdictional capacities in adjudicating Sassower's disciplinary petition and claims raised in relation thereto, let alone that they acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05; *see also Pierson*, 386 U.S. at 554, 87 S.Ct. at 1217.

■ Absolute immunity likewise bars Sassower's claims against the non-judicial defendants. Under the doctrine of quasi-judicial immunity, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature. *See Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988). Here, quasi-judicial immunity, which bars claims against administrative law judges and hearing examiners performing judicial functions, protects hearing officer Galfunt in his individual capacity from liability. *See Cleavinger*, 474 U.S. at 200, 106 S.Ct. at 500. In addition, because state bar disciplinary proceedings are clearly judicial in nature, *see Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982), quasi-judicial

---

5. Although it is unclear whether Sassower directly challenged N.Y.Comp.Codes R. & Regs. tit. 22, § 691.2 in the state court proceedings, Sassower vigorously litigated her challenge to, *inter alia*, N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4 and the related "disciplinary mechanism," which would encompass the provisions of § 691.2. Compl. ¶ 198; Cert. Pet'n. at A–93 to A–94.

immunity bars claims against state bar disciplinary committee members Casella, Sumber and the members of the Grievance Committee.[6] *See Klapper v. Guria,* 153 Misc.2d 726, 729, 582 N.Y.S.2d 892, 895 (1992) (quasi-judicial immunity bars action against counsel to state bar disciplinary committee and its members for prosecution and adjudication of disciplinary petition).

■■■■■ In addition, Sassower's claims for damages against defendants in their official capacities are barred by the Eleventh Amendment, which precludes suits brought in federal court against a state or its agency, where, as here, there is no express statutory waiver or consent. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–02, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir. 1977). The Eleventh Amendment also bars actions against state officials sued in their official capacities where, as here, the state is the real party in interest. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988). In addition, defendant Grievance Committee, as "part of the judicial arm of the state of New York," *Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970), is not a "person" amenable to suit under § 1983. *Rapoport v. Departmental Disciplinary Comm. for the First Judicial Dep't,* No. 88 CIV. 5781 (MJL), 1989 WL 146264, at *1 (S.D.N.Y. Nov. 21, 1989).

■■■■ In view of the early dismissal of Sassower's federal claims, the Court declines to exercise pendent jurisdiction over the remaining state claim for intentional infliction of emotional distress. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218

(1966); *Diamond v. Am–Law Publishing Corp.,* 745 F.2d 142, 148 (2d Cir.1984).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment shall be and hereby is granted.[7] In addition, Sassower's cross-motions for a preliminary injunction, summary judgment, and reconsideration shall be and hereby are denied. The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**

---

**6.** Likewise, absolute prosecutorial immunity bars Sassower's claims against Attorney General Koppell, in which she claims he conspired to maliciously prosecute the disciplinary petitions against her in violation of her state and federal constitutional rights. *See, e.g., Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (prosecutorial immunity bars claims for acts taken by prosecutor as an advocate for the state, regardless of motive); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**7.** In light of the dismissal of Sassower's claims, the Court need not consider defendants' requests for dismissal pursuant to Federal Rule of Civil Procedure 41(b) or for abstention.