**Howard M. THALER and William B. Falow, Plaintiffs,**

v.

**Gary L. CASELLA, individually and in his official capacity as Chief Counsel to the Grievance Committee for the Ninth Judicial District, and Maryann Yanarella, individually and in her official capacity as a staff attorney to the Grievance Committee for the Ninth Judicial District, Defendants.**

**No. 95 CIV. 9933(WCC).**

United States District Court, S.D. New York.

March 19, 1997.

William B. Falow, of counsel, Law Offices of William B. Falow, Yonkers, New York, Ronald Cohen, of counsel, Law Offices Of Ronald Cohen, New York City, for Plaintiffs.

David Monachino, Asst. Attorney General, of counsel, Dennis C. Vacco, Attorney General of the State of New York, New York City, for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiffs Howard Thaler ("Thaler") and William Falow ("Falow"), both attorneys, have brought this action under 42 U.S.C. § 1983 against Gary Casella, Chief Counsel to the Grievance Committee to the Ninth Judicial District ("Grievance Committee"), and Maryann Yanarella, staff attorney to the Grievance Committee, individually as well as in their official capacities. Plaintiffs allege that defendants' conduct in connection with the Grievance Committee's investigation and recommendation of disciplinary charges against plaintiffs was tortious, and violated plaintiffs' Fourteenth Amendment right to due process as well as various provisions of New York's Judiciary Code, Disciplinary Rules and Ethics Code. Defendants have moved for dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6), or in the alternative for summary judgment under FED. R. CIV. P. 56.

## BACKGROUND [1]

Plaintiffs current difficulties began in 1987 when the Grievance Committee, upon receiving complaints that plaintiffs had participated in fraudulent real estate transactions, began an investigation pursuant to section 691.4 of the New York Rules of Court.[2] Defendants now allege that plaintiffs perjured themselves before the Grievance Committee and submitted false and misleading information in response to the complaints. On November 6, 1990, the Grievance Committee recommended that plaintiffs be suspended from practicing law [3] and requested authorization to commence formal disciplinary proceedings.[4] At that time, defendants had not yet filed charges of professional misconduct. (These were not filed until May 8, 1992.)

On June 10, 1991, the Appellate Division, Second Department, authorized disciplinary proceedings against plaintiffs and temporarily suspended them from practicing law. On August 19, 1991, the Appellate Division granted plaintiffs' motion for reargument,

---

**1.** In summarizing these facts we have borrowed heavily from the unpublished May 18, 1994 Memorandum and Order issued by Judge Dearie of the Eastern District of New York (No. 93 Civ. 4061), dismissing a prior and nearly identical § 1983 suit previously brought by plaintiffs.

**2.** Section 691.4(c) of the New York Rules of Court provides in relevant part: "Investigation of professional misconduct may be commenced upon receipt of a specific complaint by this court ..." McKinney's New York Rules of Court § 691(4)(c) (1997).

**3.** Section 691.4($l$)(1) of the New York Rules of Court provides in relevant part:

An attorney who is the subject of an investigation, or of charges by a grievance committee of professional misconduct ... may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. (2) The suspension shall be made... after notice of such application has been given to the attorney.... The court shall briefly state its reasons for its order of suspension....

McKinney's New York Rules of Court § 691.4($l$)(1) (1997).

**4.** Section 691.4(e) of the New York Rules of Court provides that:

Upon receipt or initiation of a specific complaint of professional misconduct, any such committee may, after preliminary investigation and upon a majority vote of the full committee ... forthwith recommend to this court the institution of a disciplinary proceeding where the public interest demands prompt action and where the available facts show probable cause for such action.

McKinney's New York Rules of Court § 691.4(e) (1997).

but only to the extent of vacating their interim suspensions.

Plaintiffs allege that the Appellate Division suspended them temporarily based upon various "ex parte communications" from defendants Casella, Chief Counsel to the Grievance Committee, and Maryann Yanarella, staff attorney to the Grievance Committee. Mr. Falow claims that in December of 1992, upon examination of the Appellate Division court file on his case, he discovered a letter dated May 23, 1991 from Ms. Yanarella to Diana Maxfield Kearse, the principal law assistant to the Presiding Justice of the Appellate Division, which stated in its entirety: "Enclosed as per your request, is the information on the above referenced attorney [William B. Falow]." [5] (Exh. A to 1993 Yanarella Aff. now Exh. B to 1995 Yanarella Aff.). Although the content of the referenced "enclosures" has not been disclosed to the Court, defendants maintain that plaintiffs are not entitled to the material, discussing the possibility that it might have been a confidential report seeking permission to instigate disciplinary proceedings. (1993 Yanarella Aff. ¶ 4). With regard to the May 23rd letter, Yanarella averred in 1992 that she has no recollection of having a "conversation" with the law clerk of the Appellate Division, and that she believes what the Court requested were documents from a prior disciplinary proceeding, which were irrelevant to the current proceeding. (December 16, 1992 Yanarella Aff.)

Plaintiffs also claim that the Appellate Division maintained "a file with respect to each of their cases which contained information to which they were denied access." Pl. Br. p. 8. (This allegation is identical to their 1993 allegation that the Clerk of the Appellate Division said that "secret files" were being maintained on them at the Clerk's Office. Defendants in 1993 denied that plaintiffs were denied access to any "private files.")

On May 8, 1992, plaintiffs were served with formal disciplinary charges, the specific nature of which were not disclosed in the parties' papers. In December 1992, Mr. Falow moved the Appellate Division to dismiss the disciplinary proceedings, alleging that the authorization for those proceedings, having been obtained via "ex parte communications," violated due process. In January 1993, Mr. Thaler made a similar motion. The Appellate Division denied both motions, without providing a specific basis for its decisions, and the New York Court of Appeals denied plaintiffs' request for leave to appeal the denial of the motions on the ground that the decisions were interlocutory. A special referee has been appointed to hear the disciplinary cases against each plaintiff. There is no claim that the referee has been shown any so-called "secret" materials.

On September 1, 1993, plaintiffs filed a complaint in the Eastern District of New York, arguing that defendants' use of "ex parte" communications to secure authorization to commence disciplinary proceedings and the delay before the filing of formal charges violated their due process rights, and that section 691.4 of the New York Rules of Court was facially unconstitutional. Plaintiffs sought a temporary restraining order barring the prosecution of disciplinary proceedings and an order giving them access to the "secret," "confidential and private" files. On September 8, the Eastern District denied the motion for a temporary restraining order. Then, on May 18, 1994, the Eastern District dismissed plaintiff's complaint, which had requested an injunction blocking the disciplinary proceedings, access to any "ex parte communications," and ten million dollars in damages. The Court found that it lacked jurisdiction under the Rooker–Feldman doctrine, since a decision by it would have the practical effect of allowing a federal court to undertake appellate review of the state court's determination of plaintiff's constitutional claims. In the alternative, the Court found that it was compelled to abstain from interfering with an ongoing state proceeding under the Younger abstention doctrine.

In November 1995, plaintiffs filed this action under § 1983, seeking compensatory and punitive damages for violations of their due

---

**5.** May 23rd was approximately six months after the Grievance Committee requested that plaintiffs be temporarily suspended and disciplinary proceedings be instigated against them, and less than a month before the Appellate Division granted the Grievance Committee's request.

process rights based upon the same incidents that formed the basis of the 1993 complaint in the Eastern District. The present complaint alleges eight separate causes of action, three of which (numbers one, two and four) allege violations of plaintiffs' Fourteenth Amendment rights to due process resulting from the defendants' alleged "ex parte" communications to the Appellate Division.

Claim one alleges that plaintiffs' rights to due process were violated as a result of three separate "ex parte" communications by defendants to the Appellate Division. The first alleged communication is a 1990 letter which they now claim not to have received and which they characterize as an improper request to "calendar" Thaler's and Falow's motions together. This action is the first time plaintiffs' have brought allegations regarding this letter.[6] In addition to violating plaintiffs' due process rights, defendants' sending of the letter allegedly violated plaintiffs' "right to a separate adjudication on the separate and individual merits of their causes," Compl. ¶ 17, as well at N.Y. Jud. L. § 90(6), since formal charges had not yet been filed. The second communication relied upon by plaintiffs is the May 23rd letter, discussed *supra*. The third alleged communication from defendants to the Appellate Division was "a 'sealed' file on plaintiff Falow which contained material from a 1979 complaint made against Falow to the Grievance Committee wherein Falow had been exonerated after a hearing." Compl. ¶ 31. Plaintiffs allege this transmission was in violation of N.Y. Jud. L. § 90(10) regarding the treatment of sealed files. They also allege that defendants were engaged in an ongoing conspiracy to conceal the fact of their "ex parte" communications and a pattern of making and/or receiving "ex parte" communications in violation of various rules of ethics.

Claim two merely repeats and realleges the first claim, except that it recites that these actions were taken "in excess and outside the scope of [defendants'] lawful authori-ty." Compl. ¶¶ 58–60. Claim four recites the same alleged "ex parte" communications, and alleges that they violated Due Process and N.Y.Code Prof.Resp. Dr 1–104A and DR 7–110B as well as EC 7–35. The other five claims allege that defendants' "ex parte" communications violated N.Y. Jud. L. § 90(10) and various provisions of N.Y. Prof. Rules and Ethical Code, and further constituted tortious conduct.

On January 23, 1996, defendants moved this court to dismiss this action, or in the alternative, for a summary judgment, on the basis that: (1) we lack jurisdiction over this matter under the Rooker–Feldman doctrine; or (2) we are compelled to abstain from deciding the action for reasons of comity; or (3) we are bound by the doctrines of res judicata or collateral estoppel to follow the Eastern District's 1994 Memorandum and Order; or (4) defendants are entitled to immunity from damages.

## DISCUSSION

### Summary Judgment Standard

■ Although defendants have styled this motion, in the alternative, as a motion to dismiss plaintiffs' claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6), because both sides have submitted affidavits and exhibits supplementing the pleadings, this Court will treat this motion as one seeking summary judgment pursuant to Fed.R.Civ.P. 56. *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985), *cert. denied, sub nom, M.J.M. Exhibitors, Inc. v. Stern,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986).

Summary judgment is appropriate "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990). A fact is material if, on the basis of that fact, "a reasonable jury could return a verdict for the

---

6. Yanarella stated in her 1996 affidavit that "upon information and belief" it was regular office practice to send a copy of such letters to investigatees, such as plaintiffs and that she would have done so. 1996 Yanarella Aff. ¶ 8. In addition, she states that the letter was not a request to calendar or consolidate, but merely contained *pro forma* language included at the request of the Appellate Division for its convenience, since it often "calendars" related proceedings together. *Id.* at ¶ 10.

nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In this motion, plaintiffs initially urge that we should not consider defendants' motion because they failed to file a Rule 3(g) statement as required by our local rules. While we are entitled to deny the motion on this ground, we are not compelled to do so but may overlook the "technical deficiency" of a party's submission. *Zeno v. Cropper,* 650 F.Supp. 138, 139 (S.D.N.Y.1986), (*citing Reisner v. General Motors Corp.,* 511 F.Supp. 1167, 1174–75 n. 14–15 (S.D.N.Y.), *aff'd,* 671 F.2d 91 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982)). Though it appears that defendants indeed failed to submit a timely Rule 3(g) statement with their initial moving papers, they subsequently served one with their reply. Plaintiffs requested and were granted permission to file a sur-reply, which they declined to do. Moreover, defendants' affidavits set forth clearly the few issues of fact which are disputed. Thus, since plaintiffs were not prejudiced by defendants' failure to file a 3(g) statement, we decline to use this procedural error as a means to deny defendants' otherwise meritorious motion.

In their motion papers, defendants argue, based upon several different legal theories, that since plaintiffs have raised almost identical issues in their motions in state court and before the Eastern District, we should not give them a third bite at the apple. We consider these various theories in turn.

*The 1993 Complaint and Preclusion*

Defendants argue that the Eastern District's 1993 Memorandum and Order prevents us from hearing this case under the doctrines of either res judicata or collateral estoppel. However, the 1993 decision dismissing the complaint for lack of jurisdiction, or alternatively, abstention, does not support res judicata because it is not a final judgment on the merits. *Nilsen v. City of Moss Point Mississippi,* 701 F.2d 556, 563 (5th Cir.1983) (dismissals for want of jurisdiction are not decisions on the merits); *American Trial Lawyers Ass'n v. New Jersey Supreme Court,* 409 U.S. 467, 469, 93 S.Ct. 627, 629, 34 L.Ed.2d 651 (1973) (abstention does not in-

volve the abdication of federal jurisdiction but the postponement of its exercise and the trial court should retain jurisdiction pending the state court proceedings). For the same reasons, the 1993 decision cannot support collateral estoppel or issue preclusion, since the constitutional issues were not actually decided. *Moccio v. N.Y. State Office of Court. Admin.,* 95 F.3d 195, 200 (2d Cir. 1996).

*Younger Abstention*

Defendants have also requested that we abstain from deciding this case under the Younger doctrine. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). That doctrine applies to prevent a federal court from *enjoining* an ongoing state civil or criminal proceeding. *Williams v. Lambert,* 46 F.3d 1275, 1282 (2d Cir.1995) (emphasis added). Since plaintiffs are not asking this court to enjoin the disciplinary proceedings, Younger abstention is not applicable.

*The State Court Action and the Rooker–Feldman Doctrine*

Defendants next urge us that based upon the Appellate Division's denial of Thaler's December 1992 and Falow's January 1993 motions to dismiss the disciplinary proceedings as violating due process, and the subsequent denial of their request to appeal these rulings, we should dismiss plaintiff's current complaint for lack of subject matter jurisdiction under the Rooker–Feldman doctrine. That doctrine holds that a district court lacks subject matter jurisdiction to entertain a federal suit attacking a state court judgment against a particular individual. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). It requires that an aggrieved state court litigant must pursue his claims directly in the state appellate courts and ultimately to the United States Supreme Court. *Feldman,* 460 U.S. at 476, 103 S.Ct. at 1311; *Rooker,* 263 U.S. at 415, 44 S.Ct. at 150. However, a plaintiff can still bring in federal district court a general challenge to a state

rule, *Feldman* at 483–86, 103 S.Ct. at 1315–17, unless the issues are "inextricably intertwined" with those resolved in the state judgment against the individual. *Id.* at 482, n. 16, 103 S.Ct. at 1316, n. 16.

The Eastern District of New York dismissed plaintiffs' 1993 § 1983 complaint alleging due process violations arising out of these same facts on Rooker–Feldman grounds, concluding that it had no jurisdiction since plaintiffs had raised their constitutional claims in motions before the Appellate Division. Defendants urge that since this complaint and the 1993 complaint allege essentially the same violations, we should dismiss this one on the same grounds relied upon by the Eastern District. However, in this complaint, plaintiffs have requested monetary damages, whereas in 1993 the complaint sought an injunction of the disciplinary proceedings, in addition to monetary damages. This request for monetary damages alters our Rooker–Feldman analysis.

■ The Second Circuit has stated that the Rooker–Feldman doctrine "at a minimum" is coextensive with preclusion principles. *Moccio,* 95 F.3d at 198 (2d Cir.1996). However, it has also stated, with regard to claim preclusion or res judicata, that:

> A New York plaintiff is not barred from seeking damages in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding requesting injunctive or affirmative relief. The reason is that damages are not available in these circumstances in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights [suit]
> . . . .

*Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir. 1987); *Moccio,* 95 F.3d at 200. Under these principles, since plaintiffs were not able to seek damages in their motion to dismiss the disciplinary proceedings, nor its appeal, their federal claim for damages for violations of their civil rights would not be precluded by res judicata.

■ Their claims might be barred by collateral estoppel, or issue preclusion, however, since collateral estoppel applies to § 1983 actions. *Id., (citing Giakoumelos v. Coughlin,* 88 F.3d 56, 58 (2d Cir.1996)). Under New York law, "collateral estoppel will apply only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Moccio,* 95 F.3d at 200.

■ Plaintiffs argue that we cannot know whether the issues were fully and necessarily decided, since the Appellate Division issued an opinion simply denying their motion, without stating its grounds, and the New York Court of Appeals denied leave to appeal because the Appellate Division's denial was interlocutory. We are entitled to rely upon this opinion, however, should we choose, since the requirement that an issue be necessarily decided for collateral estoppel purposes "does not require that the prior judgment contain the precise words 'on the merits' in order to be given res judicata effect; it suffices that it appears from the judgment that the dismissal was on the merits." *Strange v. Montefiore Hospital & Medical Center,* 59 N.Y.2d 737, 463 N.Y.S.2d 429, 430, 450 N.E.2d 235, 236 (1983); *Barrett v. Kasco Constr. Co.,* 56 N.Y.2d 830, 452 N.Y.S.2d 566, 438 N.E.2d 99 (1982).

■ The fact that the decision was rendered upon an order does not preclude it from serving as the basis for preclusion. "[T]he modern rule is that an order made upon a motion has the same effect as a judgment, and that although technical and historical distinctions might be drawn between final orders and final judgments, the doctrine of res judicata applies to both." 73 N.Y.JUR.2D "Judgments" § 354 (1996), (citing *Vavolizza v. Krieger,* 33 N.Y.2d 351, 352 N.Y.S.2d 919, 923, 308 N.E.2d 439, 442 (1974) (denial of motion to vacate guilty plea); *Litz Enter., Inc. v. Standard Steel Indus., Inc.,* 57 A.D.2d 34, 394 N.Y.S.2d 765, 768–69 (4th Dep't 1977) (A party will not be denied the benefits of res judicata where a final order on the merits has not been reduced to a formal judgment, it is on the merits and the time to appeal has expired. The burden of proving that the prior judgment was on the merits is on the party seeking to rely upon

the judgment.)) Since the disciplinary proceedings are still underway, the Appellate Divisions' rulings on plaintiffs' motions are not yet final orders, however. This fact should not work to the plaintiffs' advantage either. While an interlocutory order is not usually res judicata, *In re Levine,* 177 Misc. 412, 32 N.Y.S.2d 218 (1941), *aff'd,* 263 A.D. 1013, 34 N.Y.S.2d 414 (1942), the Second Circuit has also stated that "it cannot be the meaning of Rooker–Feldman that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders." *Doctor's Assoc., Inc. v. Distajo,* 107 F.3d 126, 138 (2d Cir.1997).

■ An examination of the parties' moving papers and the decision issued by the Appellate Division shows that plaintiffs raised their due process claims, as they were entitled to, in the motions before the state court. (*See* 1995 Yanarella Aff. Exh B, including, inter alia,: (1) Statement in Opposition to Motion for Leave to Appeal (filed in the New York Court of Appeals, June 2, 1993), (2) Affirmations in Opposition (filed in the Appellate Division, Second Department, December 16, 1992)). Moreover, attorneys, such as plaintiffs, are entitled as of right to appeal the outcome of a disciplinary proceeding, subject to the limitations prescribed in the New York State Constitution dealing with the jurisdiction of the Court of Appeals. 6 N.Y.Jur.2D "Attorneys" § 33 (1996), (*citing Javits v. Stevens,* 382 F.Supp. 131, 141 (S.D.N.Y.1974) ("Under New York law, an appeal may be taken as of right only if there is a dissent in the appellant's favor, or a reversal of the court below, or a substantial constitutional question is directly involved.")). Thus, if the plaintiffs are given a full and fair opportunity to litigate that claim in the state courts, this action is barred.

We are guided in this situation by the Second Circuit's decision in *Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). There, the New York Attorney General had instigated a criminal investigation of the Temple to determine whether it was engaging in fraud and had obtained subpoenas against several Tem-

ple members including its "founder and 'titular head,'" Henry Mackey. *Id.* at 180. Without complying with the subpoenas, Mackey and the Temple brought a § 1983 suit against the Attorney General, amongst others, alleging a conspiracy to violate their constitutional rights and seeking injunctive relief from the subpoena as well as compensatory and punitive damages. *Id.* Meanwhile, the Attorney General moved in state court for an order to compel compliance with the subpoena; Mackey and the Temple cross-moved to quash the subpoenas on the grounds that they were issued pursuant to a conspiracy to violate their civil rights. The Attorney General then moved in federal court for abstention pending the outcome of the motions in state court, which was granted. (The court abstained under the Younger doctrine and then stayed the remainder of the claims.) *Id.* at 181.

The state court then denied the motion to quash "thereby rejecting appellants' conspiracy claim." *Id.* The federal action was then allowed to proceed, and the district court found that the § 1983 claims were barred under the doctrine of collateral estoppel. The Second Circuit upheld the bar, explaining that since in New York a subpoena will be quashed if compliance will interfere with fundamental rights such as those guaranteed by the First Amendment, the state court had reached the constitutional claims. *Id.* at 183. Further, the district court had properly found that Mackey and the Temple could "adequately raise their constitutional challenges to the Attorney general's conduct in the pending state proceedings." *Id.* The Second Circuit noted that it was proper for the district court to stay, rather than dismiss, the complaint, since if appellants had been successful in the state court, their only recourse would be to quash the subpoenas—they were entitled to no damages. It concluded:

> Thus, by staying the federal action, [the district judge] provided appellants with the opportunity for returning to federal court to receive monetary or injunctive relief for any constitutional violations found by the state court. Conversely, the judge also recognized in the order that if appellants

were not successful in the state court, then those state court findings could have preclusive effect against appellants upon their return to federal court.

*Id.* at 184 (citations omitted).

Therefore, since a final Appellate Division decision will serve as collateral estoppel in this case if plaintiffs are afforded a full and fair opportunity to litigate their constitutional claims [7] in the disciplinary proceeding, (thus meeting the requirements of the Rooker–Feldman doctrine), and the state court proceeding is not yet completed, we note that it is quite likely that we will not have jurisdiction over this case, should the Appellate Division's decision be upheld. At minimum, this motion is premature, since a finding by the state court that certain of defendants' actions were unconstitutional would also serve as collateral estoppel regarding those actions in this suit, leaving only the issue of damages. However, before deciding to stay this action pending the outcome of the state proceedings, a brief analysis of defendants' argument that they are immune from damages is warranted.

*Immunity from Damages*

▮▮▮ The Second Circuit has endorsed the conclusion that members of bar association disciplinary committees are absolutely immune from suit for damages in their individual capacity, since they act in a "quasi-public adjudicatory or prosecutorial capacity." *Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 58 (2d Cir.1996) (citations omitted). In fact, the Southern District has explicitly held that defendant Casella is absolutely immune from liability. *Sassower v. Mangano,* 927 F.Supp. 113, 120–121 (S.D.N.Y.1996) (because disciplinary proceedings are judicial in nature, judicial immunity bars claims against state bar disciplinary committee members and members of the Grievance Committee, in particular, defendant Casella), (*citing Klapper v. Guria,* 153 Misc.2d 726, 582 N.Y.S.2d 892, 895 (1992) (quasi-judicial immunity bars action against counsel to state bar disciplinary committee and its members for prosecution and adjudication of disciplinary petition)). It goes almost without saying that if Casella, as Chief

Counsel to the Grievance Committee is absolutely immune, his law clerk, Yanarella, is likewise immune.

The only exception to this absolute immunity is found if defendants acted " 'in the clear absence of all jurisdiction.' " *Sassower,* 927 F.Supp. at 120, (*citing Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978)). Here, in receiving the complaints of plaintiffs' clients, investigating them, recommending to the Appellate Division that formal charges be brought, and cooperating with the Appellate Division in its determination of the charges, defendants were clearly acting within the scope of their jurisdiction. The accusation that defendants' actions may have violated certain procedural or ethical rules does not change this conclusion. The Second Circuit has stated, with reference to judicial immunity in particular, that the proper analysis is of the "nature of the act" and not of the impropriety of the act, because "if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act.... If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or in excess of his authority." *Mireles v. Waco,* 502 U.S. 9, 13, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991).

▮▮▮ Thus, defendants, as Chief Counsel and law clerk to the Grievance Committee, are entitled to absolute immunity from damages in their individual capacities. Moreover, the Eleventh Amendment, which precludes suits brought against a state or its agency where there is no express consent, bars plaintiffs' claims for damages against defendants in their official capacities. *See Sassower,* 927 F.Supp. at 120; *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Since the Grievance Committee is "part of the judicial arm of the state of New York," *Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970), the real party in interest is the state. *See Sassower,* 927 F.Supp. at 121. In addition, the Grievance Committee is not a

---

**7.** At this point we have no reason to believe they will not be afforded such an opportunity.

"person" amenable to suit under § 1983. *Id.; Yorktown Medical Lab. v. Perales,* 948 F.2d 84, 87 n. 1 (2d Cir.1991).

Therefore, it becomes unnecessary to stay this action pending the outcome of the state proceedings, since even if the Appellate Division's conclusion that defendants' actions were constitutional is overturned on appeal in the state courts, any damages claims predicated upon that finding, or resulting from any possible extra claims raised here that were not raised, fully litigated and actually decided in the state court proceeding, would be barred by defendants' absolute immunity or by the Eleventh Amendment. Thus, we decline to stay this action and instead dismiss it in its entirety.

SO ORDERED.