**FUCHSBERG & FUCHSBERG, Abraham Fuchsberg, Seymour Fuchsberg and Preston J. Douglas, Plaintiffs–Appellees,**

v.

**Anna GALIZIA and Stephen J. Finkelstein, Defendants,**

**Chicago Insurance Company, Defendant–Appellant.**

**Docket No. 01–7654.**

United States Court of Appeals, Second Circuit.

Argued: March 27, 2002.

Decided: Aug. 01, 2002.

Steven A. Coploff, Steinberg & Cavaliere, LLP (Kevin F. Cavaliere, on the brief), White Plains, NY, for Defendant–Appellant.

Jeffrey G. Stark, Meyer, Suozzi, English & Klein, P.C. (Michael A. Ciaffa, on the brief), Mineola, NY, for Plaintiffs–Appellees.

Before MESKILL, SACK, and BRIGHT,* Circuit Judges.

SACK, Circuit Judge.

Chicago Insurance Company ("CIC") appeals from a declaratory judgment en-

---

* The Honorable Myron H. Bright, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

tered by the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*) holding that CIC must defend and indemnify the law firm Fuchsberg & Fuchsberg and its partners (collectively, "F & F") in a legal malpractice action brought against them. *See Fuchsberg & Fuchsberg v. Chicago Ins. Co.*, No. 00 CIV. 3118, 2001 WL 484013, 2001 U.S. Dist. LEXIS 5738 (S.D.N.Y. May 7, 2001). CIC argued before the district court that coverage for F & F is foreclosed under an exclusion provision in its insurance contract because the F & F associate who committed the malpractice for which F & F seeks coverage knew of his own wrongdoing. The district court held that CIC is collaterally estopped from raising this issue by the decision of the Appellate Division, First Department, of the New York Supreme Court in *Holloway v. Sacks and Sacks, Esqs.*, 275 A.D.2d 625, 713 N.Y.S.2d 162 (1st Dep't 2000), a case in which CIC raised the same issue. CIC now contends that the *Holloway* court did not "actually and necessarily decide[ ]" the issue, Appellant's Br. at 20, and that in any event CIC never received "a full and fair opportunity to litigate" it, *id.* at 21, and thus that the district court erred. Because we conclude that CIC raised the issue in the *Holloway* action and had a full and fair opportunity to litigate it, and that the Appellate Division necessarily rejected · it on the merits, we conclude that CIC is collaterally estopped from raising it in this case.

## BACKGROUND

The district court's opinion sets forth the pertinent facts in some detail. *See Fuchsberg*, 2001 WL 484013, at ˌ*1–*4, 2001 U.S. Dist. LEXIS 5738, at *3–*13. We recite them here only insofar as is necessary to explain our disposition of this appeal.

Sometime before 1995, F & F purchased legal malpractice insurance from Home Insurance Company ("Home") under a New York State Bar Association program administered by the Bertholon–Rowland Corporation. In 1995, the Bar Association notified its members that it was replacing Home with CIC as the provider of legal malpractice insurance under its program. Accordingly, F & F obtained a policy from CIC with an effective date of May 15, 1995. The policy includes "tail" coverage for incidents that occurred after the effective date of the previous policy issued by Home, but prior to the effective date of the policy issued by CIC. Paragraph B.2 of the CIC policy provides, however, that such tail coverage is available only if, before the policy's effective date, "the Named Insured, any partner, shareholder, [or] employee . . . had no reasonable basis to believe that the Insured had breached a fiduciary duty or to foresee that [a] Claim would be made against the Insured."

On March 30, 2000, F & F was sued for legal malpractice by Stephen J. Finkelstein, a former F & F client who had retained the law firm to bring an action against Mount Sinai Hospital, among others, with respect to medical treatment that Finkelstein had received there. F & F had dutifully filed a suit in Supreme Court, New York County, on Finkelstein's behalf in 1980, but had failed to appear to argue a motion, leading the court to strike the case from its calendar in 1984. At some point, F & F assigned the Finkelstein case to Allan Jacobs, an F & F associate, but Jacobs never made a motion to restore the case to the court calendar. On February 3, 1993, the clerk of the Supreme Court entered a certificate of abandonment and neglect to prosecute. Jacobs nonetheless informed Finkelstein on multiple occasions that his case was on the court calendar awaiting trial.

In 1999, an F & F partner discovered that Jacobs had failed to pursue Finkelstein's action with respect to his medical treatment at Mount Sinai Hospital and also had deleted the case from the law firm's computer database. F & F promptly fired Jacobs and informed Finkelstein that his case against Mount Sinai had been dismissed. This prompted Finkelstein's legal malpractice action against F & F in which he claimed that the firm had been negligent in prosecuting his action against Mount Sinai, in failing to move to restore the claim to the court calendar, and in misrepresenting its status.

When F & F advised CIC that it had been sued by Finkelstein, CIC responded with a letter disclaiming coverage. Among reasons for disclaiming, CIC cited Paragraph B.2 of F & F's policy, thereby asserting that CIC was not required to defend and indemnify F & F because, before the policy's effective date, at least one individual at F & F had a reasonable basis to foresee Finkelstein's claim.

F & F then brought the instant action, seeking a declaration that CIC is obligated under the terms of the insurance policy to defend and indemnify it in Finkelstein's legal malpractice action. CIC raised several arguments before the district court, including that Paragraph B.2 forecloses coverage because Jacobs was an "employee [who, before the policy's effective date,] had [a] reasonable basis to believe that the Insured had breached a fiduciary duty or to foresee that [a] Claim would be made against the Insured."

The parties cross-moved for summary judgment, but then consented to a bench trial on the basis of affidavits, documentary evidence, and deposition testimony. On May 7, 2001, the district court issued an opinion and order declaring that CIC is required to defend and indemnify F & F in Finkelstein's action. With regard to CIC's

argument that Jacobs's knowledge of his own wrongdoing excludes coverage under Paragraph B.2, the district court held that CIC is collaterally estopped from raising this issue because the same issue was decided against it by the Appellate Division in *Holloway*.

*Holloway* involved a fact pattern strikingly similar to that in the instant case. Richard Holloway brought a legal malpractice action against Sacks and Sacks, a law firm, because one of its associates had failed to file a personal injury action on Holloway's behalf before the statute of limitations ran. *Holloway*, 275 A.D.2d at 625, 713 N.Y.S.2d at 163. Sacks and Sacks then brought a third-party action against its insurer, CIC, seeking indemnification. Like F & F, Sacks and Sacks had previously obtained legal malpractice insurance from Home, but had switched to CIC in 1995 pursuant to the New York Bar Association's insurance program. The New York trial court granted CIC's motion for rescission on the ground that the insurance contract was void *ab initio* because Sacks and Sacks had failed to disclose in its application the possibility of a legal malpractice action by Holloway. *Id.* at 626, 713 N.Y.S.2d at 164. Sacks and Sacks's insurance contract contained a Paragraph B.2 identical to the one in F & F's contract, and CIC, as an alternative to its rescission defense, argued on appeal that the firm associate's knowledge of his own misconduct foreclosed coverage for Sacks and Sacks under that provision. The Appellate Division reversed the judgment of the trial court, and held that Sacks and Sacks was entitled to a defense and to indemnification under its contract. *Id.*

Although the opinion filed by the Appellate Division in *Holloway* explicitly addresses only the rescission issue—and does not mention CIC's argument regarding Paragraph B.2—Judge Cote, in the instant case, nonetheless held that the Ap-

pellate Division had "necessarily decided that Paragraph B.2 [does] not preclude coverage to the law firm where one of its associates had concealed his own malpractice." *Fuchsberg,* 2001 WL 484013, at \*7, 2001 U.S. Dist. LEXIS 5738, at \*21. "Accordingly," she concluded, "based upon the Appellate Division's decision in [*Holloway*], Jacobs'[s] knowledge of his own wrongdoing does not preclude insurance coverage to [F & F] under Paragraph B.2 of the policy." *Id.*

CIC appeals.

## DISCUSSION

■ We write here to address CIC's challenge to the district court's application of the law of collateral estoppel, which we review *de novo. See SEC v. Monarch Funding Corp.,* 192 F.3d 295, 303 (2d Cir. 1999). Several other issues that are raised by CIC are disposed of by a summary order we are entering simultaneously with the filing of this opinion.

■ The parties do not dispute that New York law governs the question whether CIC is collaterally estopped by the decision of the Appellate Division in *Holloway* from arguing that Jacobs's ability to foresee the Finkelstein legal malpractice claim forecloses coverage for F & F under Paragraph B.2. Under New York law, collateral estoppel prevents a party "from relitigating an issue decided against that party in a prior adjudication." *Maxwell v. Board of Co-op. Ed. Servs.,* 256 A.D.2d 345, 681 N.Y.S.2d 335, 336 (2d Dep't 1998). It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a "full and fair opportunity" to litigate. *Johnson v. Watkins,* 101 F.3d 792, 794–95 (2d Cir.1996) (quoting *Schwartz v. Pub. Adm'r,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)). Although the Ap-

pellate Division's opinion in *Holloway* does not explicitly address the issue of the proper interpretation of Paragraph B.2, its decision will nonetheless have preclusive effect with regard to that issue if resolution of the issue was "by necessary implication ... contained in that which [was] explicitly decided." *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677 (2d Cir.1997) (quoting *Norris v. Grosvenor Mktg. Ltd.,* 803 F.2d 1281, 1285 (2d Cir.1986) (construing New York law)). The "necessary implication" requirement must be clearly met for a decision to have collateral estoppel effect on an issue it does not explicitly address. *BBS Norwalk One,* 117 F.3d at 677.

■ F & F's argument regarding the preclusive effect of *Holloway* is simple but compelling: CIC clearly raised the Paragraph B.2 issue in its brief to the Appellate Division. If the Appellate Division had agreed with CIC's interpretation of Paragraph B.2, it would have concluded that CIC was under no contractual obligation to indemnify Sacks and Sacks, and thus ruled in CIC's favor. The Appellate Division ruled, however, that CIC was obligated to indemnify Sacks and Sacks. Rejection of CIC's Paragraph B.2 argument was therefore necessary to that which the Appellate Division explicitly decided, and CIC is precluded from raising the issue again here.

■ CIC makes several arguments in rebuttal, all of which lack merit.

First, CIC argues that, in light of the Appellate Division's silence regarding the proper interpretation of Paragraph B.2, we do not know that the Appellate Division did not deem CIC's Paragraph B.2 argument waived. We agree with CIC that if a court does not address an issue because it deems the argument on the issue to have been waived, then, for collateral estoppel purposes, the issue has not been decided. *See Continental Casualty Co. v. Rapid–*

*American Corp.*, 80 N.Y.2d 640, 649, 609 N.E.2d 506, 510, 593 N.Y.S.2d 966, 970 (1993) (holding that collateral estoppel applies only to an issue necessarily "raised and decided" in the previous adjudication). But we can look to the record of the previous litigation to determine whether the previous court could plausibly have deemed an argument waived. In so doing here, we observe that CIC explicitly raised its Paragraph B.2 argument in its answer to Sacks and Sacks's complaint, and argued in a summary judgment motion that coverage was foreclosed under the terms of the insurance contract. Thus, as a matter of New York law, the argument was preserved for appeal. *Cf. Krehling v. Krehling*, 190 A.D.2d 1039, 1040, 594 N.Y.S.2d 476, 477 (4th Dep't 1993) (holding that the Appellate Division will not consider arguments raised for the first time on appeal). CIC also clearly raised the argument in its brief to the Appellate Division. Thus, the Appellate Division could not have rejected Chicago's Paragraph B.2 argument on grounds of waiver. Had it wished to avoid reaching the Paragraph B.2 issue, the court's only available courses of action were to affirm the trial court's finding of rescission, or to vacate and remand for consideration of the Paragraph B.2 argument by the trial court. It chose instead to enter judgment against Chicago. It therefore necessarily reached the issue raised by CIC's argument and decided it.**

Second, CIC argues that it did not have a "full and fair opportunity" to litigate the Paragraph B.2 issue before the Appellate Division. To the contrary, CIC did in fact make the argument, and it had every in- centive to make it persuasively inasmuch as the Paragraph B.2 issue was potentially dispositive of Sacks and Sacks's action.

■ Third, CIC argues that it cannot be collaterally estopped by the Appellate Division's decision because the New York Court of Appeals denied its motion for leave to appeal. CIC relies for this argument on our statement in *Johnson* that "[i]f a party has not had an opportunity to appeal an adverse finding, then it has not had a full and fair opportunity to litigate that issue." *Johnson*, 101 F.3d at 795. But context makes clear that CIC's reading of this statement is overbroad. In *Johnson*, a party argued that a former defendant in a criminal proceeding was estopped from rearguing facts found against him at a suppression hearing. *Id.* at 794. We rejected this argument because the former defendant had ultimately been acquitted, eliminating the opportunity and incentive to seek review through New York's standard appellate procedures, which play "a critical role in safeguarding the correctness of judgments." *Id.* at 795–96. By contrast, after losing before the Appellate Division in *Holloway*, CIC was fully able to seek relief through the appellate procedures normally available. Discretionary denial by the New York Court of Appeals of a party's motion for leave to appeal (or, for that matter, under federal law of collateral estoppel, a denial by the United States Supreme Court of a party's petition for a writ of certiorari), is not equivalent to the absence of an *opportunity* to appeal, and does not prevent the underlying decision of the Appellate Division from having collateral estoppel effect

---

** CIC also argues that the Appellate Division could have rejected its Paragraph B.2 argument on grounds of estoppel. The theory of estoppel advanced by Sacks and Sacks, however, was that alleged misrepresentations by Bertholon–Rowland Corporation regarding the scope of "tail" coverage that Sacks and Sacks would receive estopped CIC from arguing that the policy was rescinded. The estoppel claim did not relate to CIC's Paragraph B.2 argument, and thus did not provide grounds for rejecting it.

against that party in future proceedings. *Cf. Thaler v. Casella,* 960 F.Supp. 691, 698 (S.D.N.Y.1997) (noting that a party could be collaterally estopped by a decision of the Appellate Division even after the New York Court of Appeals had denied that party's motion for leave to appeal).

Finally, CIC argues that any potential preclusive effect of *Holloway* does not prevent it from arguing that associates other than Jacobs had knowledge of malpractice in the Finkelstein matter before 1995, and thus that coverage is unavailable on that basis. This is true but irrelevant. The district court found a lack of evidence that an F & F lawyer other than Jacobs had, before the issuance of the CIC policy, a "reasonable basis ... to foresee that a claim would be brought against the firm." *Fuchsberg,* 2001 WL 484013, at *11, 2001 U.S. Dist. LEXIS 5738, at *35 *36. We have no basis on which to conclude that this factual finding was clearly erroneous. *See Mobil Shipping and Transp. Co. v. Wonsild Liquid Carriers Ltd.,* 190 F.3d 64, 67 (2d Cir.1999).

## CONCLUSION

For the foregoing reasons, CIC is precluded from arguing that Jacobs's knowledge of his own wrongdoing forecloses coverage for F & F under Paragraph B.2 of its insurance contract. The judgment of the district court is affirmed.