ALFRED E. MITCHELL ET AL. *v.* MEDICAL INTER-INSURANCE EXCHANGE
(AC 27360)

Schaller, Harper and Lavine, Js.

Argued February 6—officially released June 19, 2007

*Brian W. Smith,* for the appellant (defendant).

*Andrew A. Cohen,* with whom, on the brief, was *Alex J. Cuda,* for the appellees (plaintiffs).

*Opinion*

HARPER, J. The sole issue in this appeal is whether the defendant, Medical Inter-Insurance Exchange doing business as MIIX Insurance, was obligated to defend and indemnify the plaintiffs, physicians Alfred E. Mitchell and Anthony Viola, physician's assistant Maria Darrow and New Milford Orthopedic Associates, LLC, in

the underlying medical malpractice action (underlying litigation). The trial court decided that the defendant was under such a duty because the medical malpractice claim was made during the extended reporting period granted by the terms of the defendant's insurance policies with the plaintiffs. The defendant claims on appeal that the court misinterpreted the policies' provisions, as well as the governing regulations of Connecticut state agencies. We affirm the judgment of the trial court.

The facts underlying the defendant's appeal are not in dispute. Mitchell and Viola are physicians and principals in New Milford Orthopedic Associates, LLC (practice). At all relevant times, Darrow was employed by the practice as a physician's assistant.

Mitchell, Viola and the practice each had separate professional liability insurance policies with the defendant. The three policies, which were identical in all material respects, provided for the commencement of coverage on January 1, 2002, and the termination of coverage on January 1, 2003. Furthermore, each policy was a "claims-made policy," meaning that coverage under the policy depended on the date that the insured reported the claim to the defendant.

Attached to each policy was an endorsement form containing additional terms relating to the time frame for reporting claims to the defendant. In relevant part, the endorsement form stated: "In the event of termination of coverage, the named insured shall have: 1. written notice by the [defendant] of an automatic extended reporting period of thirty (30) days immediately following the termination of insurance in which claims otherwise covered by this policy may be reported if and only if, the insured does not obtain an extended reporting period endorsement or coverage of such claims under a policy issued by another insurance carrier . . . ." This language was added by the defendant in an effort to

comply with the regulations promulgated under General Statutes § 38a-327,[1] which require insurers to include a thirty day "automatic extended reporting period" in all claims-made policies. See General Statutes § 38a-327; Regs., Conn. State Agencies §§ 38a-327-1 through 38a-327-4.

On December 19, 2002, less than two weeks before the termination of their insurance policies, the underlying litigation was initiated against the plaintiffs. The plaintiffs sent a letter notifying the defendant of the underlying litigation, which the defendant received on January 15, 2003. That same day, the defendant sent a letter to the practice denying coverage. Specifically, the defendant took the position that "the automatic extended reporting period immediately following the termination of the insurance is only in effect if the claim is not covered . . . by another carrier, by a policy issued by another carrier." It is undisputed that the plaintiffs did not have an insurance policy with another carrier that would cover the claims asserted in the underlying litigation.

The plaintiffs thereafter initiated the present declaratory judgment action seeking a judicial determination that the policies obligated the defendant to defend and indemnify them in the underlying litigation. Following the parties' stipulation of facts and submission of briefs, the court issued a memorandum of decision on January 4, 2006, rendering judgment in favor of the plaintiffs. The court relied on the policies' language granting an "automatic extended reporting period of thirty (30) days immediately following the termination of insurance . . . ." In that regard, the court wrote: "To find that there is an automatic extended reporting period without

---

[1] General Statutes § 38a-327 provides: "On or before April 1, 1988, the Insurance Commissioner shall adopt regulations, in accordance with the provisions of chapter 54, to establish standards for insurance policies written on a claims-made basis."

the coverage being available for that extended thirty day period would be analogous to having a right with no purpose. The regulation [on which the policies' language was based] was meant to cure situations such as this one. The [underlying litigation] was filed against the plaintiffs at the end of December. It would have been a covered event if reported on the same day as it was served on the plaintiffs. It was reported to [the defendant] within fifteen days of the termination of the policy and within the thirty day automatic extended reporting period." Thus, the court declared that the defendant was obligated to defend and indemnify the plaintiffs in the underlying litigation in accordance with the terms of the insurance policies. Following the court's denial of a motion for reconsideration, the defendants filed the present appeal with this court.

"Interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . Unlike certain other contracts, however, where absent statutory warranty or definitive contract language the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 174, 713 A.2d 1269 (1998).

Both parties agree that the policies included a provision that afforded the plaintiffs "an automatic extended reporting period of thirty (30) days immediately following the termination of insurance" on January 1, 2003. The parties disagree, however, about whether this provision required the defendant to provide coverage for the medical malpractice claim that was reported during the automatic extended reporting period.

The provision at issue was added to the policies by the defendant in order to satisfy the statutory requirements for claims-made insurance policies, which are codified in §§ 38a-327-1 through 38a-327-3 of the Regulations of Connecticut State Agencies. "[I]f the policy comports with the language of the regulation, it will be deemed to provide that same level of protection permitted by the regulation. . . . In order for a policy [inclusion] to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Internal quotation marks omitted.) *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 844, 912 A.2d 1037 (2006). Here, neither party disputes that the provision at issue is substantially congruent with, and authorized by, § 38a-327-3 (b) of the Regulations of Connecticut State Agencies. As such, interpretation of the policies' language raises a question of statutory interpretation. See *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 865 A.2d 428 (2005) ("Administrative rules and regulations are given the force and effect of law. . . . We therefore construe agency regulations in accordance with accepted rules of statutory construction." [Citation omitted; internal quotation marks omitted.]) Id., 751.

When presented with an issue of statutory construction, our review is plenary. See *In re William D.*, 97 Conn. App. 600, 606, 905 A.2d 696, cert. granted on other grounds, 280 Conn. 943, 912 A.2d 479 (2006). Furthermore, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the

language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[2] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *In re William D.*, supra, 606.

Finally, "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 238–39, 915 A.2d 290 (2007).

We begin our analysis with an examination of the governing statute and its accompanying regulations.

---

[2] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

General Statutes § 38a-327 directs the insurance commissioner to "adopt regulations . . . to establish standards for insurance policies written on a claims-made basis." Pursuant to that statutory authority, the commissioner promulgated § 38a-327-3 (b) of the Regulations of Connecticut State Agencies, which requires that all claims-made policies provide "an automatic extended reporting period of at least thirty (30) days upon termination of coverage." The regulations do not contain a definition of the phrase "automatic extended reported period." The phrase "automatic extended reporting period *coverage*," however, is defined as "coverage for that period of time specified in the policy wherein claims first made after the termination date of the policy but within thirty (30) days of the termination date of the policy will be considered first made during the policy term." Regs., Conn. State Agencies § 38a-327-1 (g).

Because § 38a-327-3 (b) mandates an "automatic extended reporting period" rather than "automatic extended period *coverage*," the defendant argues that § 38a-327-3 (b) only requires the provision of additional time within which to report claims. Under this reading, coverage would exist only if the insured purchased additional insurance that specifically included claims arising during the thirty day extended reporting period.[3]

When § 38a-327-3 (b) is read concurrently with the other regulations concerning claims-made policies, it becomes readily apparent that there are fatal flaws in

---

[3] The defendant also argues that the policies' authorization of an "automatic extended reporting period" in conjunction with the option to purchase "unlimited extended reporting period coverage" suggests that coverage is not necessarily afforded to claims made during the automatic extended reporting period. Yet, "unlimited extended reporting coverage," (or what § 38a-327-3 [d] refers to as "additional extended reporting period coverage") is entirely different from the coverage provided during the *automatic* extended reporting period at issue in this case. Accordingly, the policies' authorization of both types of coverage does not necessarily mean that one circumscribes the scope of the other.

the defendant's interpretation. Specifically, a "claims-made policy," as defined in § 38a-327-1 (a), is "an insurance policy or an endorsement to an insurance policy *that covers liability* for injury or damage that the insured is legally obligated to pay . . . arising out of incidents, acts or omissions, as long as the claim is first made during the policy period or any extended reporting period." (Emphasis added.) Stated differently, under a claims-made policy, the making—or reporting—of a claim automatically triggers coverage.

The fact that § 38a-327-3 (b) does not explicitly state that insurers must provide coverage for claims made during the automatic extended reporting period is inconsequential in light of the definition of "claims-made policy." Section 38a-327-1 (a) establishes that a claim "first made during the policy period *or any extended reporting period*" will be covered under a claims-made policy. (Emphasis added.) Because the act of reporting a claim initiates coverage, the mandate under § 38a-327-3 (b) that "each claims-made policy . . . provide an automatic extended reporting period" necessarily means that insurers must provide coverage for claims reported during that period.[4]

In this case, the defendant received written notice of the underlying litigation on January 15, 2003, fourteen days after the January 1, 2003 termination date. Because the claim was reported within the thirty day automatic extended reporting period, it should have been covered under the plaintiffs' "claims-made" policies with the

---

[4] The defendant resists this conclusion by citing two cases, which, it argues, demonstrate that "the existence of policies in which there is an extended reporting period, but not a concomitant extended coverage period, is not an unheard of situation." See *Federal Ins. Co.* v. *CompUSA, Inc.*, 319 F.3d 746 (5th Cir. 2003); *Fuchsberg & Fuchsberg* v. *Galizia*, 300 F.3d 105 (2d Cir. 2002). Because neither of the cases cited concerns the interpretation of Connecticut's regulations related to claims-made policies, they are inapposite to our analysis.

defendant. The defendant's refusal to provide coverage for this claim, notwithstanding its having been reported timely, was contrary to the terms of the policies at issue and § 38a-327-1 (a) of the regulations. As such, the trial court declared properly that the defendant was obligated to defend and indemnify the plaintiffs in the underlying litigation.

The judgment is affirmed.

In this opinion the other judges concurred.