JAMES CHRISTIAN *v.* HARLEYSVILLE WORCESTER
INSURANCE COMPANY
(AC 27913)

DiPentima, McLachlan and Lavine, Js.

Argued September 7—officially released November 6, 2007

*Robert S. Kolesnik, Sr.*, with whom, on the brief, was *James Christian*, pro se, for the appellant (plaintiff).

*Jon Berk*, for the appellee (defendant).

McLACHLAN, J. The plaintiff, James Christian, appeals from the judgment of the trial court denying his application to compel arbitration as to the defendant, Harleysville Worcester Insurance Company. The dispositive issue on appeal is whether the defendant's insurance policy covered the dealer plate attached to the motorcycle involved in the plaintiff's accident.[1] We conclude that under the circumstances of this case and the unambiguous language of the insurance policy, the plate was not covered. Thus, we affirm the judgment of the trial court.

The following facts, as found by the court, are relevant to the plaintiff's claim on appeal. On February 1, 1995, the defendant issued an insurance policy to Stanley's Auto Body, Inc. (Stanley's), an auto body shop

---

[1] The plaintiff asserts two issues on appeal. First, the plaintiff argues that the defendant is liable to pay uninsured motorists benefits because the dealer license plate was registered with the department of motor vehicles (department), and the defendant did not notify the department about the cancellation of the policy. Second, the plaintiff claims that the plate, affixed to the motorcycle involved, while not specifically referenced in the policy, is nevertheless covered under the policy. Because we find that the latter issue is dispositive of the claim, we do not need to address the first issue.

focused solely on automobile repairs.[2] On December 27, 1996, the defendant sent Stanley's a renewal and payment notice for the period of February 1, 1997, through January 31, 1998. On March 3, 1997, upon Stanley's request, Stanley's insurance agent sent a notice to the defendant requesting that the policies in effect be "cancelled flat."[3] During the periods of February 1, 1997, through January 31, 1998, and February 1, 1998, through January 31, 1999, Stanley's obtained insurance from another insurance company, namely, General Accident, which later became One Beacon Insurance (One Beacon).

On March 30, 1998, the plaintiff went to Stanley's garage to do repair work on his girlfriend's automobile. Michael Wilkowski,[4] a friend of the plaintiff, routinely let the plaintiff use Stanley's garage to perform work on his own vehicle.[5] On the day in question, Wilkowski

---

[2] This policy was issued in 1995 and had been renewed on February 1, 1996, for an additional year.

[3] This term "denotes a cancellation ab initio, as though the [policy] had never been in force." *Highlands Ins. Co.* v. *Hobbs Group, LLC*, 373 F.3d 347, 350 n.4 (3d Cir. 2004). "[A]ccording to insurance industry usage, a 'cancellation' may under some circumstances be made 'flat,' meaning effective from the policy's inception, eliminating liability for either premiums or losses incurred in the interim." *Escobedo* v. *Estate of Snider*, 14 Cal. 4th 1214, 1225, 930 P.2d 979, 60 Cal. Rptr. 2d 722 (1997).

The notice also contained an executed "policy release" by Michael Wilkowski, a principal of Stanley's, which states "[n]o claims of any type will be made against the insurance company under this policy for losses which occur after the date of cancellation shown above."

[4] "At the time of the accident involved in this case, March 30, 1998, Michael Wilkowski was the president and one of three stockholders in an active business, Stanley's . . . which had originally been founded by his father. It had been incorporated in its present form from sometime in the 1960s." *One Beacon Ins.* v. *Christian*, Superior Court, judicial district of Waterbury, Docket No. CV-04-0182966-S (October 5, 2004).

[5] In his affidavit, Wilkowski stated: "I would occasionally let my friend use the garage simply as a favor. No one worked on this vehicle who was employed by Stanley's . . . and no one other than [the plaintiff] did anything to that automobile that day."

lent the plaintiff his personal motorcycle[6] so that the plaintiff could retrieve a car part from an auto parts store. Wilkowski attached a motorcycle dealer or repairer's plate, number MXA 197,[7] to the motorcycle. While riding the motorcycle, the plaintiff and his girlfriend were involved in a serious motor vehicle accident with John Bly, Jr., who was later found to be at fault for the accident.[8]

After the plaintiff settled his case with Bly, he brought an uninsured motorists coverage action against One Beacon, which was Stanley's insurance provider on the date of the accident. One Beacon brought a declaratory judgment action to determine if it was financially responsible to the plaintiff. On October 6, 2004, the court, *Gormley, J.*, granted a motion for summary judgment in favor of One Beacon. *One Beacon Ins.* v. *Christian*, Superior Court, judicial district of Waterbury, Docket No. CV-04-0182966-S (October 5, 2004). The court concluded that because the motorcycle was owned by Wilkowski personally, and the endorsement on the policy issued to Stanley's did not include plate number MXA 197, One Beacon was not financially responsible under its policy.

Subsequently, the plaintiff filed an action to compel arbitration against the defendant, contending that the policy it originally issued in February, 1995, was still

---

[6] "In 1972, Michael Wilkowski purchased a red Harley Davidson Sportster motorcycle in his own name and for his own use. He garaged it at his home, paid local property tax on it, and when it was registered, it was always in his name, and he paid for the vehicle upkeep, repair and insurance. The motorcycle was never owned by Stanley's . . . or registered to Stanley's. It was continuously registered and insured in Wilkowski's own name from 1972 until approximately 1984 when he allowed the registration to lapse. It was not reregistered in his own name until early 1999." *One Beacon Ins.* v. *Christian*, Superior Court, judicial district of Waterbury, Docket No. CV-04-0182966-S (October 5, 2004).

[7] The department issued Stanley's this plate on or about April 15, 1996.

[8] The plaintiff collected Bly's policy limit of $100,000.

in effect on March 30, 1998. The plaintiff made two contentions. First, the plaintiff argued that the special financial responsibility insurance certificate (certificate) filed with the department of motor vehicles (department), which states that "this certificate is effective from February 1, 1995 and continues in effect until ten days after written notice to the department of the cancellation or the termination of the policy and renewals," operates to keep the policy in effect in "perpetuity" until the department receives notice that the insurance policy has been terminated. Second, the plaintiff argued that because the MXA 197 plate was affixed by Wilkowski, a shareholder of Stanley's, the defendant's policy covered the plaintiff's accident.

On December 7, 2005, the court issued its memorandum of decision, rejecting the plaintiff's contentions. Specifically, the court found that "the plate MXA 197 [was] not covered by the [defendant's] policy because, one, it was not listed and, more importantly, the policy itself had been canceled by the insured fourteen months prior to the [plaintiff's] accident." Thus, the court concluded that because no contractual relationship existed between the parties after January 31, 1997, the defendant could not be held financially responsible.[9] Thus,

[9] The court made the following findings:

"1. The motorcycle was at all times owned by Michael Wilkowski, and it was never registered or owned by Stanley's.

"2. The dealer plate MXA 197 was not listed anywhere on the [defendant's] policy or any endorsement issued by the [defendant].

"3. The [defendant's] policy was cancelled at the direction of Stanley's as of February 1, 1997.

"4. No consideration was ever paid to renew the [defendant's] policy subsequent to February 1, 1997.

"5. The court finds no contractual relationship exists between these parties after February 1, 1997.

"6. The court finds that the failure to complete the ministerial act, that is, the filing of the notice of cancellation or termination does not override the contractual obligations of the parties. A contract has a beginning and an end, and absent any holdover provisions, which are not present here, all obligations of the [defendant] ended with the cancelling of the policy by Stanley's on February 1, 1997."

the court denied the plaintiff's application to compel arbitration and dismissed the action. This appeal followed.

The plaintiff claims on appeal that the court improperly denied his application to compel arbitration.[10] The plaintiff's contentions are twofold. First, the plaintiff asserts that the defendant is liable to pay uninsured motorists benefits because it filed the certificate with the department and it did not cancel its obligation, as required by law, until February 25, 2005. Second, the plaintiff claims that the defendant is responsible for underinsured damages associated with the operation of the motorcycle with the plate MXA 197 because even though the plate was not specifically listed in the policy or the various endorsements, it was nevertheless covered by the policy. Particularly, the plaintiff contends that the defendant is liable for underinsured motorists coverage because the policy and endorsements at issue in the present case are ambiguous and are subject to numerous interpretations, which include a construction that there is coverage of the MXA 197 license plate. We disagree.

"Interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. Unlike certain other contracts . . . where absent statutory warranty or definitive contract language the intent of the parties and thus the

---

[10] We note that, under Connecticut law, the trial court's ruling denying an application to compel arbitration is a final judgment. See *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 697 n.5, 846 A.2d 862 (2004); see also *Travelers Ins. Co.* v. *General Electric Co.*, 230 Conn. 106, 107–108, 644 A.2d 346 (1994); *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 768–69, 613 A.2d 1320 (1992). Because this implicates a question of law, our review is plenary. See *State* v. *Philip Morris, Inc.*, 279 Conn. 785, 797, 905 A.2d 42 (2006). In this action, the plaintiff is not challenging the legal basis for the court's decision; rather, he is challenging the merits of the court's decision to deny his application to compel arbitration.

meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Mitchell* v. *Medical Inter-Insurance Exchange*, 101 Conn. App. 721, 725, 923 A.2d 790, cert. denied, 284 Conn. 903, 931 A.2d 265 (2007).

"Well established principles guide our interpretation of the policy. The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] [is] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . *A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . .* The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous." (Emphasis in original; internal quotation marks omitted.) *Mallozzi* v. *Nationwide Mutual Ins. Co.*, 72 Conn. App. 620, 624–25, 806 A.2d 97, cert. denied, 262 Conn. 915, 811 A.2d 1292 (2002); see also *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 199, 901 A. 2d 666 (2006).

We first address the threshold question of whether the terms of the contract were ambiguous, accommodating an interpretation that the MXA 197 plate was

covered under the defendant's policy before the policy was cancelled, even though it was not specifically listed in the policy. Looking to the language of the policy and its various endorsements, the defendant's "Commercial Auto Policy Common Declarations" lists five license plates under "Schedule of Covered Autos You Own." Of the five plates listed, three plates were specified automobiles listed as a 1985 Chevrolet Corvette, a 1985 Ford Pickup, a 1987 Buick Grand Prix, and two were dealer plates listed as DA 375 and DB 375, all for private passenger automobiles.[11] There are no motorcycle dealer plates listed. Moreover, the endorsement entitled "Connecticut Uninsured and Underinsured Motorists Coverage" states in pertinent part:

"B. WHO IS AN INSURED

"1. You.

"2. If you are an individual, any 'family member'.

"3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'. The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction."

Additionally, the endorsement entitled "Connecticut Dealer or Repairer Plates Coverage" provides:

"B. Any 'auto' you operate while used with plates described in this endorsement is a covered 'auto', but only while:

"1. Used in your garage business;

"2. Used by you or your full-time employees in personal affairs; or

---

[11] According to the testimony of Anthony Ruggiero, a central office supervisor for the department in the dealers and repairers division, the series D plates represent passenger plates, while the plates beginning with the "MX" abbreviation pertain to motorcycle plates.

"3. Loaned to a customer:

"a. For demonstration;

"b. While an 'auto' he or she owns is left with you for service or repair . . . ."

A review of the policy demonstrates that there is no ambiguity in its terms. The policy language indicates that only certain plates were covered, none of which was a motorcycle dealer plate. The policy language also describes what is covered under the dealer plates, which is limited to plates "used in [the] garage business . . . ." Despite this contractual language, the plaintiff contends that even though MXA 197 was not specifically listed in the policy, it was still covered under the policy. In support of his argument, the plaintiff references the "Garage Coverage Form," § I, "Covered Autos," "Item Two," symbol twenty-six, which designates underinsured motorists coverage. This section states in pertinent part that "[o]nly those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those 'autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement."

The plaintiff argues that because the policy was issued by the defendant on February 1, 1995, and the plate was issued to Stanley's on April 15, 1996, the plate is a covered auto under the policy because it was acquired after the policy began. Furthermore, the plaintiff submits that "[i]f the vehicle, or in this case, license plate, owned by the insured is required to carry uninsured motorists coverage, it is deemed to be covered under the terms of the policy. Connecticut law mandates that all motor vehicles must carry uninsured motorists coverage."[12]

---

[12] Uninsured and underinsured motorists coverage is governed by General Statutes § 38a-336. "[S]tatutory provisions relating expressly to uninsured

In opposition, the defendant asserts that there is no ambiguity that would extend coverage to another motor vehicle or to a motor vehicle dealer plate when it was not referenced in the policy. The defendant claims that Stanley's was "taking advantage" of the system by obtaining more private plates than it requested insurance coverage for from the defendant. Additionally, the defendant argues that uninsured motorists coverage as mandated by Connecticut law applies specifically to automobiles, not to plates. The defendant submits that the plaintiff is essentially attempting to convert a "dealer plate" into an "auto," thereby adding it to the policy.[13]

The plaintiff's argument cannot stand. First, even if the plate were issued to Stanley's after the inception of the policy, the plate was a motorcycle dealer plate, not a passenger automobile plate. The defendant's policy covered only passenger automobiles, which is consistent with the business of the auto body shop, which worked exclusively on passenger vehicles. There was no evidence offered to show that the motorcycle dealer plate was ever added or that Stanley's ever intended to add this plate. The court observed that "it [is] telling

motorist coverage apply also to underinsured motorists." (Internal quotation marks omitted.) *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 166, n.1, 622 A.2d 545 (1993).

[13] In *One Beacon Ins.* v. *Christian*, supra, Superior Court, Docket No. CV-04-0182966-S, in his brief in support of his motion for summary judgment, the plaintiff advanced an argument against Stanley's insurance provider concerning the accident very similar to the one he is advancing in the present action. There, the court rejected the plaintiff's argument, opining that "[i]t is clear from that language [of the One Beacon policy] that there is no uninsured motorist coverage available to the defendants for the injuries they sustained while they were the operator and passenger of Michael Wilkowski's privately owned motorcycle." Id. The court concluded that because the policy referenced specific plates and did not include the plate at issue, and the plates listed were for passenger autos, the insurance company was not financially responsible. This is noteworthy because like the defendant's policy, the One Beacon policy did not list the MXA 197 plate.

that the only plates listed under the endorsement in the policy . . . are dealer plates issued for passenger motor vehicles." Most importantly, nowhere in the policy is plate MXA 197 listed.[14] Therefore, Stanley's requested that certain plates be covered under the insurance policy, a policy that was meant to protect the risk of an auto body shop that worked exclusively on passenger vehicles. Here, the plain, unambiguous language of the contract indicates that the plate was never covered under the policy. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000). Here, because the language is not ambiguous, we will not import ambiguity when there is none. Therefore, the plate was never covered under the policy in the first instance.

Moreover, the plaintiff's assertion that the plate was covered under the defendant's policy because all automobiles in Connecticut must have uninsured motor vehicle coverage is unavailing. General Statutes § 38a-336 (a) (1) provides in relevant part that "[e]ach automobile liability insurance policy shall provide insurance herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . ." General Statutes § 38a-334 states that regulations shall cover motor vehicles, motorcycles and so forth. What is absent from this list

---

[14] It is actually unclear why the MXA 197 dealer plate was issued to Stanley's. By Wilkowski's admission, "[t]he motorcycle dealer plate prefix MXA actually is used for the sale of new motorcycles. Because Stanley's . . . does not sell new motorcycles, it is unclear to me at this time how it was that the MXA 197 plate was assigned. . . . The 1972 Harley Davidson motorcycle that was involved in the accident was never owned by Stanley's . . . and was never insured under a policy issued to Stanley's . . . . It has always been owned by me, in my own personal name. When it was insured, it was always insured through a policy issued to me personally."

is license plates. As the court correctly stated, "[t]he petitioner's second argument that because this was a dealer plate issued to Stanley's, it equates to a motor vehicle under the policy, also fails. Under the definition found in . . . General Statutes § 14-1 (50), it is clear [that] a 'motor vehicle' does not equate to a dealer 'plate.' " We agree.

Additionally, we agree with the court's assertion that if anyone was responsible for providing insurance, it was Wilkowski, because the motorcycle belonged to him, not to Stanley's. The policy was issued to Stanley's to insulate it from risk: a risk involved with the business of passenger automobile repair, not motorcycle repair. When examining the policy provisions, "[t]he ultimate question of intent involves an analysis regarding the coverage that the insured expected to receive and the coverage that the insurance company expected to provide as set forth in the provisions of the policy." *Ceci v. National Indemnity Co.*, 225 Conn. 165, 172, 622 A.2d 545 (1993). In this case, the unambiguous language of the policy specifically limits the uninsured motorists protection to autos "[u]sed in your garage business . . . ." The expectation of the insured, Stanley's, was to protect it against the risk inherent in its daily practice of working on passenger automobiles or other passenger vehicles used in the operation of the garage. The motorcycle was not used in the garage business. It was at all times the personal property of Wilkowski. He simply lent the motorcycle to the plaintiff, who was not a patron of Stanley's. The dealer plate affixed to the motorcycle was not within the insured expectations of the type of risk to be covered, nor was it covered by the terms of the policy. Thus, the motorcycle was not an auto covered under the policy, and the protections of the uninsured motorists laws do not supersede the language of the policy to include a license plate that

was never listed in the policy and endorsements nor used as part of Stanley's business.

Thus, because the language of the policy and the various endorsements is not ambiguous and does not include coverage of the license plate MXA 197, even prior to the cancellation of the policy, we affirm the court's decision to deny the application to compel arbitration.

The judgment is affirmed.

In this opinion the other judges concurred.